UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| **BRENDA LIZOTTE,** | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   Case No. |
| | ) |
| **VERIZON COMMUNICATIONS,** | ) |
| **INC., d/b/a VERIZON WIRELESS,** | ) |
| | ) |
| Defendant. | ) |

**PLAINTIFF'S COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff Brenda Lizotte, by and through undersigned counsel, hereby complains against Defendant Verizon Communications, Inc., d/b/a/ Verizon Wireless ("Verizon" or "Defendant"), as follows:

**INTRODUCTION**

1. This is an action for violation of the Federal Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. ("FMLA"), the Maine Family Medical Leave Requirements Law, 26 M.R.S. § 8433 *et seq*. ("Maine FMLA"), the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. ("ADEA"), Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and the Maine Human Rights Act, 5 M.R.S. § 4571 *et seq*. ("MHRA").

2. This case challenges Defendant's: (1) discrimination against Plaintiff for exercising her rights under the FMLA and Maine FMLA; (2) age discrimination against Plaintiff in violation of the ADEA and MHRA; and (3) gender discrimination against Plaintiff on the basis of her sexual orientation in violation of Title VII and the MHRA.

1

## THE PARTIES

3. Plaintiff Brenda Lizotte ("Lizotte") is an individual residing in the Town of Cape Neddick, County of York, and State of Maine.

4. Defendant Verizon Communications, Inc. is a nationwide telecommunications company headquartered in New York, New York, doing business in Maine under the name of a division called "Verizon Wireless," which has a principal place of business in Basking Ridge, NJ. Verizon Communications and its division Verizon Wireless are hereinafter referred to collectively as "Verizon."

5. From August 16, 1999 to November 2019, Verizon employed Lizotte as an outside sales representative, most recently operating under the title Client Partner – Mobile Solutions ("Client Partner").

6. Verizon has employed more than 500 employees for each of 20 or more calendar weeks for the past two years, with employees located nationwide.

## JURISDICTION AND VENUE

7. Prior to filing this Complaint, Lizotte filed a charge of discrimination with the Maine Human Rights Commission. She received a notice of right to sue letter pursuant to 5 M.R.S.A. § 4612, sub-§6 and 4622, sub-§1, ¶ C, on or about November 16, 2020.

8. Venue is proper in this Court because all of the discriminatory practices alleged herein occurred in the County of York and State of Maine.

9. The Court has federal question subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331.

## STATEMENT OF FACTS

10. Lizotte began working for Verizon or one of its predecessors in August of 1999.

11. Lizotte was born on April 6, 1964.

12. Lizotte is a lesbian who resides with her partner, also a female. Lizotte is open about her sexual orientation and believes Verizon knew she was a gay woman.

13. Lizotte had a long career with Verizon, which was very successful until 2018.

14. In 2018, Lizotte began reporting to Ben Hung. Mr. Hung is about 20 years younger than Lizotte.

15. In 2018, Verizon hired a new CEO named Hans Vestburg.

16. Shortly after Vestburg was hired, he initiated a massive layoff that affected approximately 20,000 employees, who were mostly older employees. This was concurrent with the roll out of what Defendant referred to as, "Verizon 2.0."

17. In 2018, Verizon terminated Robert McCormick from his sales position. Upon information and belief, Verizon terminated Mr. McCormick—an older, long-term employee of Verizon—solely because of his age.

18. Lizotte was the oldest member on her team and the only gay member on her team.

19. The supervisors determined which accounts went to Client Partners.

20. In 2018, Verizon gave Lizotte several "dead" accounts, which were known within the company as having little to know sales activity. Lizotte questioned why she was given low performing accounts but did not receive any substantive response.

21. The rest of the Sales Consultants on Lizotte's team are significantly younger, in their thirties and forties. Verizon gave these younger Sales Consultants more lucrative accounts with stronger performance.

22. In August of 2018, Lizotte applied for FMLA. She requested to take a protected leave of absence in September 2018 to care for a dying parent. The stress and grief associated with caring for a dying parent preceded the leave and lasted longer than the leave itself.

23. In December of 2018, Mr. Hung placed Lizotte on a performance improvement plan ("PIP") for not meeting quarterly/quota goals.

24. Lizotte was upset with the PIP because she did not believe it was warranted. Lizotte asked Mr. Hung whether her FMLA absence to care for a dying parent affected her quota or goal for the quarter, because she was absence for a significant portion of the quarter. Mr. Hung replied that Lizotte's protected FMLA leave did not affect the results, meaning any decrease in sales performance would be held against her notwithstanding the fact that she was out on protected FMLA leave.

25. Verizon's sales quotas were determined in an arbitrary manner and they lacked supporting information or data regarding various calculation.

26. In April of 2019, all support staff for sales teams were terminated or laid off, leaving Sales Consultants to perform both administrative and sales duties.

27. In April of 2019, Verizon place Lizotte on a second PIP. She had a one-on-one meeting with Mr. Hung. Lizotte's quota for that quarter had doubled, yet Verizon continued to give her low performing sales accounts.

28. After the April 2019 meeting, some of these poor performing accounts were removed from Lizotte's assignment and given to the "acquisitions team." The acquisitions team is assigned to particularly low performing accounts.

29. These accounts continued to perform badly, but the employees working on the accounts were not reprimanded or disciplined for their poor performance in any way.

30. By contrast, Lizotte had received discipline for poor sales related to the same accounts. The acquisitions team members still received their incentive bonuses because Verizon recognized the inherent poor performance of the accounts.

31. In October of 2019, during a national monthly recognition call with the entire wireless business group, Vice President of Sales Andy Brady gave Lizotte recognition for performing at 178% of her quota. This accomplishment was announced to hundreds of Verizon employees.

32. Lizotte believed that her performance in nearly doubling the sales quota met and exceeded the expectations of her PIP.

33. Lizotte had a longstanding relationship working on the Cumberland Farms account for Verizon.

34. Through the years, Lizotte worked with Nancy Kiernan on the Cumberland Farms account. She had a good working relationship with Ms. Kiernan, who ended up leaving Cumberland Farms. Ms. Kiernan knew that Lizotte was a lesbian.

35. A man named Charles Jarrett became the CIO of Cumberland Farms in or about 2019. He contacted Lizotte directly after Ms. Kiernan left Cumberland Farms. Mr. Jarrett communicated that he wanted Kiernan removed as an authorized contact on the account.

36. Mr. Jarrett made the above request to remove Ms. Kiernan from the account on a Thursday. In response, Lizotte immediately reached out to Verizon's Coordinator of Business Operations ("CBO"). The CBO did not immediately respond to the inquiry, so Lizotte was unable to immediately respond to Mr. Jarrett.

37. Mr. Jarrett was upset by the delay in response time. As a result, he contacted Verizon and requested that Lizotte be removed from the account.

38. Mr. Jarrett behaved in a manner that suggested he did not want to interact with Lizotte because of her gender and sexual orientation. It was clear to Lizotte that Mr. Jarrett harbored bias against her that had nothing to do with legitimate business reasons.

39. Lizotte believes she was treated differently because of her sex and sexual orientation because of the way the CIO of Cumberland Farms (Mr. Jarrett) treated her. For many years prior to Mr. Jarrett's involvement, Lizotte had been successful working on the Cumberland Farms account for Verizon.

40. Immediately upon meeting Mr. Jarrett, it was apparent to Lizotte that he did not like her and did not want to work with her. Most of the time, Mr. Jarrett avoided meeting with Lizotte. On the rare occasions when Mr. Jarrett would meet with Lizotte, his body language and communication was guarded and abrupt, revealing overt discriminatory animus toward her.

41. Mr. Jarrett had no rational, legitimate business reason to dislike Lizotte or demand that she be removed from the Cumberland Farms account. Nonetheless, shortly after Mr. Jarrett made these demand, Cumberland Farms terminated Lizotte's employment.

42. Cumberland Farms demanded that Lizotte be removed from their account with Verizon because of her age, gender, and/or sexual orientation.

43. In turn, Verizon terminated Lizotte because of her age, gender and/or sexual orientation.

44. Alternatively, Lizotte's termination was the result of a pattern of sexual orientation, age, and/or gender-related bias at Verizon.

45. Verizon also retaliated against Lizotte for taking an FMLA leave of absence. Shortly after her FMLA leave ended, Lizotte's supervisor took disciplinary action against her. Verizon set Lizotte up to fail, ensuring that after her FMLA leave ended, she received unreasonable

and unattainable quotas, disparate treatment compared to similarly situated colleagues, poor performing accounts, unwarranted disciplinary action, and a PIP that was pretext for discrimination.

## COUNT I – FMLA RETALIATION
### (29 U.S.C. § 2615(a)(2))

46. Plaintiff repeats the allegations contained in Paragraphs 1 through 45 as if fully stated herein.

47. In addition to the allegations set forth above, Defendant retaliated against Lizotte for taking FMLA-protected leave to care for her dying parent.

48. Defendant's discipline of Lizotte immediately following the leave of absence, and/or subsequent termination of her employment in April of 2019, was motivated by and the result of discriminatory and/or retaliatory animus toward her for having exercised her rights under the FMLA.

49. As a result of Defendant's FMLA retaliation, Lizotte has suffered and is entitled to damages, including but not limited to lost wages and benefits, front pay, attorney's fees, costs, and expenses.

50. Defendant's violation of the FMLA was willful, justifying an award of liquidated damages under the FMLA.

WHEREFORE, Plaintiff Brenda Lizotte requests that the Court award her damages for Defendant's violation of the FMLA in the form of lost back pay, front pay, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT II – VIOLATION OF THE MAINE FMLA
### (26 M.R.S. § 847)

51. Plaintiff repeats the allegations contained in Paragraphs 1 through 50 as if fully stated herein.

52. As set forth more fully in Count I above, Defendant's conduct amounts to a violation of the Maine FMLA.

53. As a result of Defendant's violation of the Maine FLMA, Lizotte has suffered and is entitled to damages, including but not limited to lost wages and benefits, front pay, attorney's fees, costs, and expenses.

54. Defendant's violation of the Maine FMLA was willful, justifying an award of liquidated damages under the Maine FMLA.

WHEREFORE, Plaintiff Brenda Lizotte requests that the Court award her damages for Defendant's violation of the Maine FMLA in the form of lost back pay, front pay, liquidated damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT III – AGE DISCRIMINATION IN VIOLATION OF THE ADEA
### (29 U.S.C. § 621 *et seq*.)

55. Plaintiff repeats the allegations contained in Paragraphs 1 through 54 as if fully stated herein.

56. Lizotte was a member of a protected class based on her age at the time of her termination.

57. The ADEA makes it illegal for an employer to discriminate against an employee because of age.

58. Defendant's action described above amount to age discrimination in violation of the ADEA, because Verizon terminated Lizotte because of her age.

59. As a result of Defendant's age discrimination and willful violation of the ADEA, Lizotte has suffered and is entitled to damages, including but not limited to: lost wages and benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Brenda Lizotte requests that the Court award her damages for Defendant's violation(s) of the ADEA, in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

### COUNT IV – SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
**(42 U.S.C. § 2000e *et seq*)**

60. Plaintiff repeats the allegations contained in Paragraphs 1 through 59 as if fully stated herein.

61. Lizotte is a member of a protected class based on her gender and sexual orientation.

62. Title VII makes it illegal for an employer to discriminate against an employee because of gender and sexual orientation.

63. Defendant's action described above amount to sex discrimination in violation of Title VII, because Verizon terminated Lizotte's employment for discriminatory reasons based on her gender and sexual orientation.

64. As a result of Defendant's sex discrimination and willful violation of the Title VII, Lizotte has suffered and is entitled to damages, including but not limited to: lost wages and

benefits, front pay, compensatory damages including emotional pain and suffering and lost enjoyment of life, attorney's fees, costs and expenses.

WHEREFORE, Plaintiff Brenda Lizotte requests that the Court award her damages for Defendant's violation(s) of Title VII, in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## COUNT V – VIOLATION OF THE MAINE HUMAN RIGHTS ACT
### (5 M.R.S. § 4571 *et seq.*)

65. Plaintiff repeats the allegations contained in Paragraphs 1 through 64 as if fully stated herein.

66. For the reasons set forth in Counts III and IV above, unlawful discrimination and retaliation against Plaintiff have taken place within the meaning of the Maine Human Rights Act.

WHEREFORE, Plaintiff Brenda Lizotte requests that the Court award her damages for Defendant's violation of the Maine Human Rights Act, in the form of lost back pay, front pay, compensatory damages, liquidated damages, punitive damages, attorney's fees, costs and expenses, equitable and injunctive relief, and all other relief afforded to her by law.

## JURY TRIAL DEMAND

Plaintiff Brenda Lizotte hereby demands a jury trial on all matters so triable under the laws and Constitution of the United States and the State of Maine.

                                  Respectfully submitted,

Dated:  February 12, 2021          /s/ *Laura H. White*

                                  _____
                                  Laura H. White, Bar No. 4025
                                  *Attorney for Plaintiff*
                                  WHITE & QUINLAN, LLC
                                  62 Portland Rd., Suite 21
                                  Kennebunk, ME 04043
                                  (207) 502-7484
                                  lwhite@whiteandquinlan.com


                                  /s/ *Danielle Quinlan*

                                  _____
                                  Danielle Quinlan, Bar No. 5480
                                  *Attorney for Plaintiff*
                                  WHITE & QUINLAN, LLC
                                  62 Portland Rd., Suite 21
                                  Kennebunk, ME 04043
                                  (207) 502-7484
                                  dquinlan@whiteandquinlan.com